Eli Kramer, Esq. Corporation Counsel Long Beach
Your Assistant Corporation Counsel, Samuel Ungar, has requested our opinion concerning General Municipal Law, § 207-c (5), in view of the Courts' interpretations of that section in Connors v Bowles, 63 A.D.2d 956
(2d Dept, 1978), app dsmd 45 N.Y.2d 832 and Signor v City of Rochester,73 A.D.2d 837 (4th Dept, 1979).
General Municipal Law, § 207-c entitles an injured municipal police officer to receive medical and salary benefits as long as he establishes an employment-related disability that prevents him from working or if retired, to continue to receive medical benefits for the employment-related disability.
In the Connors case, a probationary police officer sustained a fractured spine while he was undergoing training in October 1976. His physician certified that the officer was capable of resuming work in June of 1977. However, prior to his recovery, the City had terminated his employment. They refused to pay any medical bills and salary subsequent to the termination. The officer brought suit to recover the unpaid medical expenses and his salary under General Municipal Law, § 207-c.
The Court held that the City had to provide medical benefits as long as the petitioner's disability lasted but that the salary ceased upon termination of employment. The police officer appealed the determination that he was not entitled to his salary. The Appellate Division disagreed with Special Term and held that a police officer is entitled to receive both medical and salary benefits so long as the employment-related disability is shown to prevent him from working.
We interpret Connors to mean that a police officer is entitled to receive medical and salary benefits until an appropriate physician's certificate states that he is capable of returning to work. If he has a permanent disability, his benefits under section 207-c continue indefinitely.
In the Signor case, a retired police officer sought medical and salary benefits under General Municipal Law, § 207-c, alleging that he had suffered heart attacks during the performance of his duties. The City refused to pay the benefits and the police officer sued. The Court granted defendant's motion for summary judgment on the ground that plaintiff had failed to submit proof in opposition to defendant's motions. Defendant had submitted proof that the police officer had voluntarily retired and that his heart disease was not related to his employment. Signor involves only a question of proof and has nothing to do with whether a police officer who is injured in the line of duty is entitled to medical benefits under section 207-c after he has voluntarily retired from active duty.
In our opinion, neither the Connors nor the Signor case changes the clear import of the provisions contained in General Municipal Law, §207-c.
Subject to certain conditions a city may authorize the appointment of volunteers to assist the mayor.
Dated: December 22, 1980
Hon. William M. Kavanaugh Corporation Counsel City of Newburgh
You ask whether it is proper for a city to authorize the appointment of volunteers to assist the mayor. The city council of the City of Newburgh has by resolution established a volunteer program. The volunteers are advisors to the mayor and are each assigned to particular program areas. They research issues, make recommendations, serve as liaisons to community groups and generally advise the mayor in their program areas. The volunteers serve without pay but utilize municipal facilities and supplies including office space, telephones, secretaries and stationery all provided by the city budget to the mayor's office.
You note that yours is a "city manager form of government and the mayor, under the Charter, has no power of appointment and no administrative functions in the city government." We assume that the volunteers limit their services to those appropriate for a mayor under a city manager government and do not encroach on the administrative prerogatives of the city manager.
Subject to certain conditions, a city may authorize appointment of volunteers to assist the mayor. Volunteers must perform governmental functions, justifying use of municipal facilities and supplies. Since they assist the mayor, their activities must be within the purview of your city charter's delegation of power and duties to the mayor. The city council, of course, in formulating the budget, will annually determine the availability of resources to continue the volunteer program, and may at any time discontinue the program.
We note that your city's resolution does not indicate how future volunteers are to be selected. The resolution refers to them as "deputy mayors". This reference implies greater responsibilities than does your volunteer program description and would probably require a charter amendment to make the title official. This is particularly significant under your city manager form of government.
We conclude that subject to certain conditions, a city may authorize the appointment of volunteers to assist the mayor.