Leberman v Instantwhip Foods, Inc. (2022 NY Slip Op 04341)

Leberman v Instantwhip Foods, Inc.

2022 NY Slip Op 04341

Decided on July 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 7, 2022

534003
[*1]William J. Leberman, as Trustee for the Bankruptcy Estate of Yvonne Hathaway, Respondent,
v
Instantwhip Foods, Inc., et al., Appellants.

Calendar Date:May 31, 2022

Before:Garry, P.J., Egan Jr., Clark, Aarons and McShan, JJ.

Santacrose & Frary, Buffalo (Sean A. Tomko of counsel), for appellants.
Stanley Law Offices, LLP, Syracuse (Thomas Welch of counsel), for respondent.

Egan Jr., J.
Appeal from an order of the Supreme Court (Tait, J.), entered September 2, 2021 in Broome County, which denied defendants' motion for summary judgment dismissing the complaint.
This personal injury action arises out of an accident that occurred on May 7, 2014, when Yvonne Hathaway, a truck driver employed by Willow Run Foods, Inc. (hereinafter Willow Run), was injured while in the process of delivering a load of dairy cargo in New York City. Hathaway commenced this action to recover for the shoulder and neck injuries she sustained in the accident. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint. Defendants complied with a regulatory requirement, which took effect approximately six weeks prior to their motion, that the motion papers contain "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which [they contend] there [was] no genuine issue to be tried" (22 NYCRR 202.8-g [a]). Plaintiff, who was substituted as a party in Hathaway's stead as the trustee of her bankruptcy estate, opposed the motion without providing a response to the statement of material facts as required by 22 NYCRR 202.8-g (b). Supreme Court denied the motion, determining that defendants had not established their prima facie entitlement to judgment as a matter of law. Defendants appeal, and we affirm.
At the outset, we reject defendants' contention that 22 NYCRR 202.8-g (c) obliged Supreme Court to deem the factual assertions in their statement of material facts to be admitted given the failure of plaintiff to respond to that statement in the appropriate manner. Although the regulation provides that "[e]ach numbered paragraph in the statement of material facts [provided by the party seeking summary judgment] . . . will be deemed to be admitted unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party" (22 NYCRR 202.8-g [c]), its use of "mandatory language is not necessarily of paramount importance in determining whether the provision in question is in fact mandatory or permissive" (Matter of Elliott v City of Binghamton, 94 AD2d 887, 889 [1983], affd for reasons stated below 61 NY2d 920 [1984]; accord State of New York v Town of Wallkill, 170 AD2d 8, 10-11 [1991]). The focus must instead be upon "the intent of the provision, gleaned from the entire regulation and the surrounding circumstances, the purpose of the provision, the policy to be promoted, and the results which would obtain if one conclusion were followed to the exclusion of another" (Matter of Elliott v City of Binghamton, 94 AD2d at 889).
Assessing those factors, 22 NYCRR 202.8-g was copied from a rule of the Commercial Division of Supreme Court (see Rules of the Commercial Division of the Supreme Court [22 NYCRR 202.70] rule 19-a), and its stated purpose was to bring "Commercial Division [r]ules into general civil practice" (Admin Order [*2]of Chief Admin Judge of Cts AO/270/20). It is evident that a new rule intended to broaden the reach of an existing rule, and that copied the text of the existing rule to do so, should be construed in the same manner as the existing rule (see e.g. Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 91 [2001]; Baldine v Gomulka, 61 AD2d 419, 422 [1978], appeal dismissed 44 NY2d 949 [1978], lvs dismissed 45 NY2d 709, 818, 837 [1978]).[FN1] As the Commercial Division rule has been read as "giv[ing] a motion court the discretion to deem facts admitted" rather than requiring it to do so, we read 22 NYCRR 202.8-g in the same manner (Abreu v Barkin & Assoc. Realty, Inc., 69 AD3d 420, 421 [2010]; see Matter of Crouse Health Sys., Inc. v City of Syracuse, 126 AD3d 1336, 1338 [2015]; Siegel & Connors, NY Prac § 281 [6th ed 2018]). Accordingly, "[w]hile it would have been better for [plaintiff] to submit a paragraph-by-paragraph response to [defendants'] statement, 'blind adherence to the procedure'" set forth in 22 NYCRR 202.8-g is not required if the proof does not support granting summary judgment or the circumstances otherwise warrant a departure from that procedure (Al Sari v Alishaev Bros., Inc., 121 AD3d 506, 506-507 [2014], quoting Abreu v Barkin & Assoc. Realty, Inc., 69 AD3d at 421; see Matter of Crouse Health Sys., Inc. v City of Syracuse, 126 AD3d at 1338; Muscato v Spare Time Entertainment, 74 Misc 3d 1215 [A], 2022 NY Slip Op 50127[U], *1-2 [Sup Ct, Schenectady County 2022]; compare Reus v ETC Hous. Corp., 72 Misc 3d 479, 483-484 [Sup Ct, Clinton County 2021] [summary judgment warranted even if 22 NYCRR 202.8-g (c) did not apply], affd 203 AD3d 1281 [2022]).
Turning to the merits, Supreme Court properly determined that defendants failed to meet their "initial burden of establishing that any alleged negligence did not proximately cause the alleged injuries" (Burdick v Tonoga, Inc., 191 AD3d 1220, 1223 [2021]; see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Joines v Karika, 184 AD2d 945, 945-946 [1992]). The record reflects that, on May 6, 2014, another Willow Run driver, Osvaldo "Ozzie" Mamtilla, drove a truck and trailer combination [FN2] to western New York and made two stops: first to pick up 970 cases of dairy creamers from defendants and then to pick up 780 cases of butter (salted and unsalted) from O-AT-KA Milk Products, Inc. (hereinafter O-AT-KA).[FN3] Mamtilla then delivered the loaded trailer back to the Willow Run facility in the Town of Woodbury, Orange County. Early the next morning, Hathaway picked up the trailer and drove it to the G.A.F. Seelig, Inc. facility in Woodside, Queens County. At some point during this two-day journey, some of the cases of creamers shifted in the rear of the trailer, causing dozens of them to lodge against the rear door. When Hathaway reached G.A.F. Seelig, got out of the truck and unlatched the rear door of the trailer, the door abruptly swung open from the weight [*3]of the cases of creamers. The door slammed into Hathaway, who in turn was, in her own words, "knocked . . . right on [her] ass" by the door as the cases tumbled to the ground.
Plaintiff alleged that defendants' agents and employees were negligent by, among other things, improperly shrink wrapping and securing the pallets of creamers so that the pallets shifted during transit and cases of creamers lodged against the rear door of the trailer. Defendants attempted to demonstrate the lack of merit to those claims via deposition testimony and documentary evidence suggesting that, although no one recalled the actual loading of the trailer, their pallets would have been loaded first since O-AT-KA employees had sealed the trailer for delivery and would not have done so unless it was heading directly back to the Willow Run facility. They also pointed to testimony reflecting that Mamtilla would not have accepted the pallets of creamers for transport if the shrink wrap around them was torn and that he would have moved and resecured those pallets if such was necessary to accommodate the pallets of butter from O-AT-KA on the trailer.[FN4] Defendants further submitted the affidavit of a safety consultant who, relying upon the foregoing, opined that the pallets of creamers were properly loaded by defendants and that the accident arose from the pallets shifting during transit, Mamtilla failing to secure the pallets properly after moving them to accommodate the pallets of butter and/or Hathaway's failure to conform to common practice and stand to the side when opening the rear door.
The foregoing was deficient in several respects. As noted above, no one recalled what occurred during the loading of the pallets, and defendants offered no proof to support their belief that Mamtilla moved the pallets of creamers in an inappropriate manner after they were loaded on the trailer by defendants. Even more fundamental, however, was defendants' failure to offer any proof to demonstrate that they had shrink wrapped the pallets properly or that their actions played no role in the shrink wrap tearing and causing numerous cases of creamers to fall against the rear door of the trailer and eventually force it open into Hathaway. The proof presented by defendants accordingly reflected, at best, that plaintiff would be unable to satisfy his burden of proving at trial that their negligence was a substantial cause of Hathaway's injuries (see Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]), but "merely pointing to gaps in a plaintiff's proof" will not suffice to demonstrate a prima facie entitlement to summary judgment (O'Connor v Aerco Intl., Inc., 152 AD3d 841, 842 [2017]; see Dow v Schenectady County Dept. of Social Servs., 46 AD3d 1084, 1084 [2007]; Johnson City Cent. School Dist. v Fidelity & Deposit Co. of Md., 272 AD2d 818, 821 [2000]; Antonucci v Emeco Indus., 223 AD2d 913, 914 [1996]). Thus, Supreme Court was correct to deny defendants' motion.
Garry, P.J., [*4]Clark, Aarons and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: We note that the language of the rules is no longer identical following recent amendments to 22 NYCRR 202.70 (see NY Reg, May 18, 2022, at 97).

Footnote 2: The trailer was a Great Dane Everest refrigerated trailer.
Footnote 3: Defendants commenced a third-party action against O-AT-KA that was discontinued soon after they moved for summary judgment.

Footnote 4: Hathaway explained that the pallets of butter were appropriately placed in the front of the trailer, both because the butter was heavier and because it needed to be stored at the cooler temperatures found at the front of the trailer.